

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-29-2001

# Coregis Ins Co v. Baratta & Fenerty

Precedential or Non-Precedential:

Docket 99-1740

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Coregis Ins Co v. Baratta & Fenerty" (2001). *2001 Decisions.* Paper 198.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/198

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 29, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos: 99-1740 & 00-1175
(Consolidated)

COREGIS INSURANCE COMPANY

v.

BARATTA & FENERTY, LTD; ANTHONY BARATTA, ESQ.;
KENNETH LEE; DANIELLE LEE

BARATTA & FENERTY, LTD; ANTHONY BARATTA, ESQ.,

     Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 99-cv-00573
District Judge: The Honorable J. Curtis Joyner

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2000

Before: BECKER, Chief Judge, NYGAARD and
AMBRO, Circuit Judges

(Opinion filed August 29, 2001)

     David Kraut
     Craig J. Fleischmann
     Cardis, Kraut & Harris
     1777 Sentry Parkway West
     Abington Hall, Suite 200
     Blue Bell, PA 19422

     Attorneys for Appellants

Mary L. Cole
Bollinger, Ruberry & Garvey
354 Eisenhower Parkway,
 Suite 1500
Livingston, NJ 07039

Attorney for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

Appellants Anthony P. Baratta ("Baratta") and Baratta &
Fenerty, Ltd. ("B&F ") appeal from judgments of the United
States District Court for the Eastern District of
Pennsylvania (the "District Court") (1) granting summary
judgment in favor of appellee Coregis Insurance Company
("Coregis") and (2) denying Baratta's and B&F 's motion for
relief from judgment based on newly discovered evidence.
The primary issue that we must decide is whether Baratta
and B&F could have reasonably foreseen, prior to the
effective date of their professional liability insurance policy,
that Baratta's handling of his clients' case involved a
breach of professional duty that might be the basis of a
legal malpractice claim. If the answer is yes, coverage for
those legal malpractice claims is excluded under the policy.

I. Background Facts and Procedural History

Kenneth Lee sustained severe injuries to his head on
December 19, 1978 when he fell out of the passenger door
of his car onto a highway. He sought treatment at Sacred
Heart Hospital ("Sacred Heart") in Norristown, Pennsylvania
where he was initially examined by Dr. Theodore Harrison,
the emergency room physician on staff. After it became
apparent that Dr. Harrison would not admit Mr. Lee to
Sacred Heart, nor transfer him to a hospital that could do
a CAT-scan of his injuries, Mr. Lee decided to return home
with his wife, Danielle Lee.

Two days later, on December 21, 1978, Mrs. Lee returned
home from work to find Mr. Lee collapsed on the floor. Mr.

Lee was then taken to St. Mary's Hospital ("St. Mary's") in Langhorne, Pennsylvania, arriving in the mid- to late morning. Mr. Lee's condition deteriorated as he was required to await treatment throughout the afternoon. At 5:00 p.m., a neurologist arrived and ordered Mr. Lee transported to Mercer Hospital in Trenton, New Jersey for a CAT-scan that ultimately revealed a subdural hematoma and brain contusion. The physicians at Mercer Hospital performed emergency surgery on Mr. Lee. However, as a result of the delay in treatment, Mr. Lee allegedly suffered severe and debilitating injuries.

In January of 1979, Mr. and Mrs. Lee consulted with Baratta, who was then with the law firm Baratta & Takiff, about the possibility of filing a medical malpractice case against Sacred Heart, St. Mary's, and the doctors who had treated Mr. Lee for the injuries he had suffered on December 19, 1978. Baratta advised the Lees that they should file a medical malpractice claim against Sacred Heart and Dr. Harrison but not against St. Mary's. He explained that he "was a personal friend of a Dr. Cahill, who was a physician at St. Mary's Hospital, and that if the Lees did not sue St. Mary's Hospital, [Dr. Cahill] would be able to testify as to the negligence of Sacred Heart Hospital and Dr. Harrison."

On March 23, 1981, Baratta filed a complaint in the Montgomery County, Pennsylvania, Court of Common Pleas (the "Court of Common Pleas") on behalf of the Lees alleging that Sacred Heart and Dr. Harrison failed to treat and diagnose properly Mr. Lee's injuries. More than ten years later, on September 17, 1991, the Court of Common Pleas dismissed the Lees' suit for lack of activity. In January of 1994, Baratta, who was by that time a partner in B&F, met with the Lees and informed them that their case had been dismissed for lack of activity but that he had taken action to get the case reinstated. On January 13, 1995, Mr. Lee sent Baratta a letter expressing his dissatisfaction with the handling of his case that stated in part:

> You have, for whatever reason that you never explained, dragged this case on since 1979. You have constantly brushed off inquiries for a case status report. You caused and continue to cause great

anguish to me and my family by ignoring my case, my plight, my right to expect you to abide by your contract with me, to represent me and my best interest, in my case for the medical negligence I encountered at the hands of Dr. Harrison at the Sacred Heart Hospital in December of 1978.

On February 22, 1995, the Court of Common Pleas denied Baratta's petition to have the Lees' case reinstated, a decision that was affirmed by the Pennsylvania Superior Court on November 20, 1995, and by the Supreme Court of Pennsylvania on April 18, 1996.

On April 24, 1996, Baratta and B&F submitted an application for professional liability insurance to Coregis, which extended coverage under Policy No. PLL 319978–8 (the "Policy") for the period May 6, 1996 to May 6, 1997. On November 6, 1996, the Lees initiated a legal malpractice action against Baratta and B&F by filing a Writ of Summons in the Court of Common Pleas. Baratta and B&F promptly reported this event to Coregis. On December 18, 1996, Coregis sent a letter to Baratta and B&F reminding them that Exclusion B of the Policy provides that"[the] policy does not apply to . . . any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM . . . ." Coregis followed up on this letter by denying coverage in January 1997 for the Lees' malpractice claims against Baratta and B&F.

On October 27, 1998, the Lees filed a complaint in the legal malpractice suit alleging, inter alia, a failure to fulfill contractual obligations, failure to exercise skill and knowledge possessed by other attorneys in the community, and failure to prosecute the Lees' case against Sacred Heart and Dr. Harrison. In addition, the complaint alleged legal malpractice for failing to sue St. Mary's.

On November 20, 1998, Baratta and B&F renewed their request for coverage, which Coregis denied on February 9, 1999. In addition, on February 3, 1999, Coregis initiated in the District Court a declaratory judgment action against

4

Baratta and B&F to obtain a declaration of its rights and obligations under the Policy. In granting Coregis' motion for summary judgment on August 3, 1999, the District Court concluded that "a reasonable attorney in the position of Baratta would foresee that his lack of action in the Lees['] medical malpractice case might be expected to be the basis of not only a tort claim, but also a contract claim" and that "Exclusion B in the 1996-97 policy . . . precludes coverage for the Lees' legal malpractice action against Baratta as a matter of law." Coregis Ins. Co. v. Baratta & Fenerty, LTD., 57 F. Supp. 2d 179, 184 (E.D. Pa. 1999). On August 31, 1999, Baratta and B&F appealed to this Court.

Notwithstanding their appeal, on December 10, 1999, Baratta and B&F filed in the District Court a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). The Rule 60(b) motion presented the District Court with newly discovered evidence contained in reports from Drs. Frederick J. McEliece and Joseph J. Levinsky that were submitted in connection with the Lees' legal malpractice action against Baratta and B&F in February and September of 1998, respectively. The McEliece report provides that despite "some confusion and at least poor communication" at Sacred Heart, there was no deviation from "the standard of care at the time," but with regard to St. Mary's, "if indeed [Kenneth Lee] arrived at 8:00 . . . in the morning and was evaluated at that time[,] the delay until 2:00 P.M. until obtaining a neurosurgical consultation is not acceptable."[1] The Levinsky report states that "[e]valuation of the care rendered [at Sacred Heart] shows no evidence of a deviation from the accepted standard of emergency medical care in 1978." However, "[e]valuation of the care at St. Mary's Hospital reveals significant deviations from the accepted standard of medical care."

_____

1. Although the McEliece report indicates that Mr. Lee arrived at St. Mary's at 8:00 a.m. and had a neurological consultation at 2:00 p.m., the Levinsky report states that Mr. Lee arrived at 10:00 a.m. and had a neurological consultation at 5:00 p.m. In any case, both reports suggest that the interval of time at St. Mary's may have constituted negligence in its handling of Mr. Lee's medical care.

By order entered on March 17, 2000, the District Court denied Baratta and B&F 's Rule 60(b) motion. On March 22, 2000, Baratta and B&F filed another appeal. By order of this Court on April 4, 2000, the two appeals were consolidated. We have appellate jurisdiction under 28 U.S.C. S 1291.

II. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a moving party is entitled to summary judgment"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Summary judgment is only appropriate if the evidence cannot reasonably support a verdict for the non-moving party. Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 856 (E.D. Pa. 1993). In making this determination, all of the facts must be reviewed in the light most favorable to, and all inferences must be drawn in favor of, the non-moving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248 (1986). Although the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must establish the existence of each element of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In the case before us, the District Court granted summary judgment in favor of Coregis after concluding that "[e]xclusion B in the 1996-97 policy . . . precludes coverage for the Lees' legal malpractice action against Baratta as a matter of law." 57 F. Supp. 2d at 184. We exercise plenary review of this decision. See Farley v. Philadelphia Hous. Auth., 102 F.3d 697, 700 (3d Cir. 1996); Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).

Exclusion B of the Policy excludes coverage for acts, errors, or omissions occurring prior to the effective date of the Policy if Baratta and B&F knew or could have reasonably foreseen that they might be the basis of a claim. Baratta and B&F do not dispute that the Lees' claims arise out of acts, errors, or omissions occurring prior to the effective date of the Policy. However, they do dispute

6

whether they knew or could have reasonably foreseen prior to that date that these acts, errors, or omissions might be expected to be the basis of a claim.

In Selko v. Home Ins. Co., 139 F.3d 146 (3d Cir. 1998), we applied a mixed subjective/objective standard to determine whether claims were excluded from coverage under an insurance policy:

> First, it must be shown that the insured knew of certain facts. Second, in order to determine whether the knowledge actually possessed by the insured was sufficient to create a `basis to believe,' it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty.

Id. at 152. Although the exclusionary provision interpreted in Selko differed in language from the one before us,[2] our holding in that case is applicable here insofar as it instructs us first to consider the subjective knowledge of the insured and then the objective understanding of a reasonable attorney with that knowledge. In Selko, we used this mixed standard to determine whether the insured had a "basis to believe" he had breached a professional duty. We will apply this same standard to determine whether Baratta and B&F could have reasonably foreseen that Baratta's prior conduct might be the basis of a claim.

A. Failure To Keep Case Active Against Sacred Heart & Dr. Harrison

There is no question that Baratta and B&F knew, prior to applying for professional liability insurance, that the Court of Common Pleas had dismissed the Lees' medical malpractice complaint against Sacred Heart and Dr. Harrison for lack of activity and that the decision of the Court of Common Pleas had been affirmed by both the

_____

2. The policy in Selko provided coverage for an act, error or omission occurring prior to the policy period "provided that prior to the effective date of this policy . . . the insured had no basis to believe that the insured had breached a professional duty." Selko, 139 F.3d at 149 n.1. As noted, the Policy in our case focuses on the foreseeability of a basis for a malpractice claim.

Pennsylvania Superior Court and the Supreme Court of Pennsylvania. Moreover, Baratta and B&F knew by May of 1996 that the Lees were dissatisfied with the legal representation they had received. To repeat the relevant portion of Kenneth Lee's January 13, 1995 letter to Baratta: "You have, for whatever reason that you never explained, dragged this case on since 1979. You have constantly brushed off inquiries for a case status report. You caused and continue to cause great anguish to me and my family by ignoring my case, my plight, my right to expect you to abide by your contract with me, to represent me and my best interest . . . ."

In our view, a reasonable attorney in possession of these facts would have realized that Baratta had breached a professional duty by failing to prosecute the Lees' case against Sacred Heart and Dr. Harrison, and that consequently there might be a basis for a claim. 3 A reasonable attorney also "would have realized that he had a dissatisfied client who would undoubtedly take further legal action absent a miraculous and unlikely turnaround" in events. Selko, 139 F.3d at 154.

Baratta and B&F nevertheless contend that they had no reason to foresee a legal malpractice claim by the Lees because, by the time of the effective date of the Policy in May of 1996, the Lees' legal malpractice action was already time-barred by the Pennsylvania statute of limitations. We disagree. When an attorney has a basis to believe he has breached a professional duty, he has a reason to foresee that his conduct might be the basis of a professional liability claim against him. He cannot assume that the claim will not be brought because he subjectively believes it is time barred or lacks merit.

In this case, there remains an open question whether the statute of limitations had run out on the Lees' malpractice action by the time Baratta and B&F applied for professional liability coverage with Coregis. Relying upon Sherman Industries Inc. v. Goldhammer, 683 F. Supp. 502 (E.D. Pa.

---

3. A breach of a professional duty and a basis for a claim are thus "two peas in a pod." If the former occurs, experience teaches that the latter can be expected to follow.

8

1988), Baratta and B&F argue that the statute of limitations began to run in January of 1994 when the Lees were informed that their case had been dismissed. Baratta and B&F maintain that they therefore had no reason to foresee a claim in May of 1996 because the two year statute of limitations under a tort theory of legal malpractice had expired by January of 1996.

However, we do not believe that a reasonable attorney could have been certain in May of 1996 that the statute of limitations had run on the Lees' claim. In Pennsylvania, "the point of time at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury." Sadtler v. Jackson–Cross Co., 587 A.2d 727, 732 (Pa. Super. Ct. 1991). "Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law." Id. In the Lees' case, application of the discovery rule would have involved a highly fact sensitive and legally complex inquiry that might have resulted in equitable tolling of the statute of limitations. For example, Mr. Lee's letter to Baratta on January 13th, 1995 evidences confusion over whether the Lees' case had been reinstated, stating"[y]ou are still my attorney bound by our contract. I want from you, in writing, to tell me what the status of my case is, what you have done to correct your error, and when we can plan to proceed to court. You have exactly two weeks to reply." On the basis of this letter, the statute of limitations arguably was tolled if the Lees had not been provided sufficient information to determine whether they had suffered an injury meriting a malpractice action against their attorney. In any event, to this date the Lees' malpractice action against Baratta and B&F has not been dismissed on statute of limitations grounds.

In short, we are uncertain when the statute of limitations began to run on the Lees' legal malpractice claim and whether the limitations period had expired by the effective date of the Policy in May of 1996. In our view, a reasonable attorney in Baratta and B&F 's position could not have been certain, and thus should not have assumed, that the limitations period had expired as a matter of law. Rather, a

9

reasonable attorney would have foreseen that there might be the basis for a claim because the statute of limitations may have been tolled beyond May of 1994 under the discovery rule.

For similar reasons, we believe Baratta and B&F had reason to foresee that there might be the basis for a malpractice claim based on a breach of contract theory, for which the statute of limitations (of four years) had not expired in May of 1996. The Court of Common Pleas may conclude that a complete failure to prosecute the case against Sacred Heart constitutes a failure to perform a "specific instruction" by the Lees to develop and prosecute that case. See Edwards v. Thorpe, 876 F. Supp. 693, 694 (E.D. Pa. 1995). Baratta and B&F were not justified in assuming otherwise and therefore had reason to foresee that there might be the basis for a claim against them.

We therefore affirm the District Court's determination that Exclusion B of the Policy precludes coverage of the Lees' claim alleging that Baratta committed legal malpractice by failing to keep their case active against Sacred Heart and Dr. Harrison.

B. Failure To Sue St. Mary's Hospital

We also agree with the District Court's conclusion that Exclusion B precludes coverage of the Lees' claims asserting that Baratta failed to investigate and file suit against St. Mary's. An allegation in the complaint filed in the Lees' legal malpractice action against Baratta and B&F in October of 1998 demonstrates that Baratta knew that the Lees had a potential claim against St. Mary's. It alleges that the following exchange took place in 1979 when the Lees first approached Baratta with their medical malpractice case:

> Attorney Baratta advised the Lees not to file any action against St. Mary's Hospital. He stated that he was a personal friend of a Dr. Cahill, who was a physician at St. Mary's Hospital, and that if the Lees did not sue St. Mary's Hospital, he would be able to testify as to the negligence of Sacred Heart Hospital and Dr. Harrison.

Baratta and B&F also knew by May of 1996 that Baratta had failed to prosecute that very case against Sacred Heart

10

that allegedly would have been strengthened by forgoing suit against St. Mary's. Finally, as the District Court observed, Baratta had received a letter from the Lees expressing their general frustration over the handling of their case. It alleged that Baratta had "brushed off inquiries for a case status report" and "dragged on" and "ignor[ed]" the case.

We conclude that a reasonable attorney in possession of these facts would have foreseen that he had breached a professional duty by failing to investigate and pursue a case against St. Mary's, and that consequently there might be a basis for a legal malpractice claim against him. Baratta presented the Lees with a strategy for maximizing their claims against Sacred Heart, which he then botched through sheer negligence and inattention. Not only did he fail to prosecute the case against Sacred Heart that was allegedly strengthened by forgoing suit against St. Mary's, he also failed to reconsider the decision not to sue St. Mary's when, by his own inaction, he was not pursuing the case against Sacred Heart. Put another way, Baratta in effect excuses his failure to sue St. Mary's by his failure to pursue the suit already brought against Sacred Heart. The alleged understanding not to sue St. Mary's can have no preclusive effect when the predicate for that alleged understanding (to pursue suit against Sacred Heart and to use as a witness against it Dr. Cahill of St. Mary's) does not exist.

Moreover, we agree with the District Court that "the Lee letter would clearly put a reasonable attorney in the same position as Baratta on notice that the Lees were frustrated about more than just the dismissal of their medical malpractice action" against Sacred Heart. 57 F. Supp. 2d at 184. That letter expresses a general frustration with Baratta's failure to spend adequate time developing their case.

Thus, we also affirm the District Court's determination that Exclusion B precludes coverage for the Lees' claim alleging that Baratta committed legal malpractice by failing to pursue a case against St. Mary's.

11

III. Relief Under Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides in part that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." This standard requires that "the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." Compass Tech., Inc. v. Tseng Labs., Inc., 71 F.3d 1125, 1130 (3d Cir. 1995).

Baratta and B&F sought relief under Rule 60(b) based upon newly discovered evidence in the McEliece and Levinsky reports. The District Court concluded that relief from judgment was not appropriate because, "[a]fter reviewing the newly produced report, it remains clear that a reasonable attorney in the position of Mr. Baratta would have foreseen that the Lees would likely file a malpractice claim against him, and therefore that Exclusion B precludes coverage for the Lees's legal malpractice action." We review this decision for abuse of discretion. See Lorenzo v. Griffith, 12 F.3d 23, 26 (3d Cir. 1993); Harris v. Martin, 834 F.2d 361, 364 (3d Cir. 1987).

The McEliece report was prepared on February 11, 1998, and the Levinsky report was prepared seven months later on September 21, 1998. Baratta and B&F discovered these reports in November of 1999 through the Lees' responses to interrogatories submitted to them on September 15, 1999 in connection with their action against Baratta and B&F for legal malpractice. The reports seem to suggest that (1) the Lees were not damaged by Baratta's failure to keep the Lees' medical malpractice case against Sacred Heart and Dr. Harrison active because Sacred Heart and Dr. Harrison followed accepted standards of medical care and that (2) the Lees were damaged by Baratta's failure to include St. Mary's as a defendant in the case because St. Mary's deviated from accepted standards of medical care.

12

These reports do not undermine the District Court's determination that Baratta and B&F had reason to foresee on or before the effective date of the Policy that Baratta's handling of the Lees' case might be expected to be the basis of a claim. In fact, we believe these reports demonstrate how off the mark Baratta was in advising the Lees to sue Sacred Heart instead of St. Mary's, and therefore reinforce our belief that Baratta and B&F should have known by May of 1996 that Baratta had breached a professional duty in his handling of this case that provided the basis for a claim against him.4 The District Court therefore acted within its discretion to deny Rule 60(b) relief from judgment on the ground that the McEliece and Levinsky reports would not have changed the outcome of its decision. See Compass Tech., 71 F.3d at 1130.

\* \* \* \* \*

For the reasons set forth above, we affirm the District Court's decision granting summary judgment in favor of Coregis because Exclusion B precludes coverage of the Lees' legal malpractice claims against Baratta and B&F. We also affirm the judgment of the District Court denying Rule 60(b) relief from judgment.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

4. We also note that the McEliece and Levinsky reports, published on February 11, 1998 and September 21, 1998 respectively, probably could have been discovered through the exercise of reasonable diligence before the District Court entered judgment on September 15, 1999, and therefore do not qualify as "newly discovered evidence" justifying Rule 60(b) relief from judgment.

13