**Bryant ROACH, Plaintiff,**

v.

**SCI GRATERFORD MEDICAL DEPT., et al., Defendants.**

**No. CIV.A.04–4459.**

United States District Court, E.D. Pennsylvania.

Nov. 4, 2005.

---

Bryant Roach, Graterford, PA, pro se.

Gregg W. Marsano, Office of Attorney General, Philadelphia, PA, Alan S. Gold, Gold Butkovitz & Robins, Elkins Park, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I.  BACKGROUND

Plaintiff, Bryant Roach, is an inmate at the State Correctional Institution at Graterford ("SCI Graterford").   On October 13, 2004 plaintiff filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983, alleging that he received inadequate medical care while an inmate at SCI Graterford (doc. no. 3).   Plaintiff also asserts a state-law claim of medical malpractice.

Plaintiff asserts that on October 20, 2003 he started to experience abdominal pain in his right side.   (Pl.'s Dep. 6.)  When the pain did not subside, he reported to the SCI Graterford Medical Department for sick call.   (*Id.* at 9–10.)   On October 23, 2003 a doctor admitted him to the infirmary for observation.   (*Id.* at 10.) The doctor gave plaintiff a mixture of Maalox and Donnatal, which stopped the pain.   (*Id.*) He was placed on a liquid diet and had his urine tested and his pulse monitored.   (*Id.* at 7.) He felt better and on October 25, 2003, he was released from the infirmary

and returned to his cell. (*Id.*) Plaintiff filed no grievances concerning his October 2003 treatment. (*Id.* at 7, 11.)

After he was released from the infirmary in October 2003, he experienced no pain for the next four months. (*Id.* at 11.) Then, on February 29, 2004, plaintiff began to experience pain in his right side. (*Id.* at 11–12.) Plaintiff went to the dispensary at approximately 9:00 a.m. (*Id.* at 12–13.) The nurse on duty, Terry Drumheller ("Ms.Drumheller"), checked his blood pressure, gave him Pepto–Bismol, and advised him to sign up for the next available sick call. (*Id.* at 12.) According to plaintiff, he "stressed to her that he did not have an upset stomach, and it had to be something more serious because of the pain he was in." (Compl.2.) Plaintiff, nevertheless, returned to his cell.

By 2:00 p.m. on February 29, 2004, plaintiff's abdominal pain intensified. (Pl.'s Dep. 15.) Plaintiff stood by the cell door and looked for someone to come and help. (*Id.*) Plaintiff spotted Lieutenant Angela Hawkins ("Lieutenant Hawkins") and told her he needed to go to the hospital. (*Id.* at 14.) Lieutenant Hawkins tried to open plaintiff's cell door, but it would not open because all of the doors in the housing unit are "locked down" between 1:45 p.m. and 2:15 p.m., while the guards' shifts are changing. (*Id.* at 15.)

Approximately five to ten minutes later, plaintiff's cell door was opened and he walked to the infirmary. (*Id.* at 17.) The attending nurse (not Ms. Drumheller) examined his stomach and made arrangements for him to go to a hospital. (*Id.* at 18.) He was transferred to Mercy Suburban Hospital, Norristown, Pennsylvania, in less than six hours. (*Id.* at 19.) At the hospital, plaintiff had his appendix and part of his colon removed. (Pl.'s Br. at App. C.) For the first time, plaintiff was diagnosed with chronic diverticulitis. (*Id.*)

On March 9, 2004 plaintiff sent a letter to John K. Murray, Deputy Superintendent of Facility Management, complaining about the actions of Lieutenant Hawkins and the alleged medical misdiagnosis and mistreatment that occurred on February 29, 2004. Plaintiff filed an Official Inmate Grievance, No. 82114, on April 22, 2004 concerning the "first nurse's actions" (Ms. Drumheller) and "Lt. Hawkins omission" that occurred on February 29, 2004. (Pl.'s Dep. at Exh. Roach 7.) The Facility Grievance Coordinator, Wendy Moyer, rejected the grievance because it "was not submitted within fifteen (15) working days after the events upon which claims are based." (*Id.*)

On April 29, 2004 plaintiff appealed to the Secretary's Office of Inmate Grievances and Appeals. (*Id.* at Exh. Roach 8.) Plaintiff's appeal was denied because he had failed to submit an intermediate appeal to the Superintendent of SCI Graterford, a prerequisite to a final appeal. (*Id.* at Ex. Roach 10.) Sharon M. Burks, the Chief Grievance Officer, advised plaintiff to file the intermediate appeal to the Superintendent, and once a response was received, he could then submit a written appeal for final review by the Secretary's Office of Inmate Grievances and Appeals. (*Id.*) Plaintiff chose not to file an intermediate appeal.

Instead, on October 13, 2004 plaintiff filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983, alleging that he received inadequate medical care while an inmate at SCI Graterford (doc. no. 3). Plaintiff also claims that defendants are liable for medical malpractice under state law. Defendants are the SCI Graterford Medical Department, Lieutenant Angela Hawkins, Julie Knauer (the supervising health care administrator),(collectively, the "Commonwealth defendants"), and Prison Health Services, Inc., a private corporation

with a contract to provide medical services to inmates at SCI Graterford. Plaintiff also brought suit against "Jane and/or John Does." [1]

The gravamen of the complaint is that defendants failed to provide plaintiff with timely and appropriate medical attention even though he was exhibiting symptoms of appendicitis. First, plaintiff alleges that Lieutenant Hawkins's failure to get plaintiff medical attention and the prison infirmary's failure to conduct tests and give plaintiff the appropriate medical treatment was the result of deliberate indifference, thereby depriving him of his Eighth Amendment right against cruel and unusual punishment. Second, plaintiff contends that the prison infirmary's failure to conduct appropriate medical tests constituted medical malpractice. Although not expressly delineated as such, plaintiff's claims may be divided into civil rights claims under section 1983 ("federal claims") and claims for medical malpractice under state law ("state-law claims").

The Commonwealth defendants timely filed a motion for summary judgment on July 27, 2005 (doc. no. 38). Prison Health Services, after being granted an extension (doc. no. 42), timely filed a motion for summary judgment on September 27, 2005 (doc. no. 45). Plaintiff timely filed his response on October 27, 2005 (doc. no. 49).

For the following reasons, defendants' motions for summary judgment will be granted as to the federal claims. Having granted summary judgment as to the federal claims which provided the basis for the Court's jurisdiction, the Court will decline to exercise jurisdiction over the state-law claims and will dismiss them without prejudice.

## II. DISCUSSION

### A. *Motion for summary judgment standard*

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* at 248–49, 106 S.Ct. 2505. In determining whether any genuine issues of material fact exist, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 305–06 (3d Cir.2001).

### B. *Sovereign immunity under the Eleventh Amendment*

Plaintiff's claims against the SCI Graterford Medical Department, as well as the claims against Lieutenant Hawkins, Ms. Drumheller, and Ms. Knauer, in their official capacities, are barred under the Eleventh Amendment. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State,

1. Plaintiff later learned the name of the "first nurse" that he alleged did not provide adequate treatment or administer the proper tests-Terry Drumheller.

or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Eleventh Amendment bars the federal courts from entertaining suits by private parties against states, state agencies, and state officials and employees acting in their official capacities, unless the state has consented to the filing of such suit. See, e.g., Edelman v. Jordan, 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 238 (3d Cir.2005); Laskaris v. Thornburgh, 661 F.2d 23, 25–26 (3d Cir.1981). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. 42 Pa.C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Therefore, all claims against the SCI Graterford Medical Department, as well as the claims against the individual defendants in their official capacities, fail.

### C. Exhaustion of administrative remedies

■ Plaintiff's deliberate indifference claims fail because he did not exhaust his administrative remedies through the Department of Corrections. The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. § 1983. The PLRA states:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such ad-

ministrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Compliance with the exhaustion of administrative remedies requirement is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir.2000). A prisoner must properly exhaust administrative remedies or risk procedural default. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

The Commonwealth of Pennsylvania's Department of Corrections Consolidated Inmate Grievance System consists of a three-part administrative process. DC–ADM 804, Inmate Grievance System Policy.[2] First, grievances must be submitted using the form DC–804, Part 1, for initial review to the Facility Grievance Coordinator within fifteen working days after the events upon which the claims are based. Second, the grievant must appeal the determination to the Facility Manager, the individual responsible for intermediate review. In the third and final step of the process, the grievant must file an appeal to the Secretary's Office of Inmate Grievances and Appeals. Only after exhaustion of this administrative process may a prisoner seek recovery in federal court.

■ Here, plaintiff failed altogether to file a grievance with regard to the allegations of deliberate indifference arising from the October 2003 incidents. With regard to the events that allegedly occurred on February 29, 2004, plaintiff similarly failed to exhaust his administrative remedies. On March 9, 2004 plaintiff sent a letter to John K. Murray, Deputy Superintendent of Facility Management. Not only did plaintiff fail to use the required form DC 804, Part 1, but he also sent his

---

2. This process is also clearly described in the "Inmate Handbook" provided to the Court by plaintiff. (Pl.'s Br. at App. E.)

"grievance" to the wrong personnel.[3] Then, on April 22, 2004, thirty-nine working days after the events upon which his claim was based, plaintiff filed form DC 804, Part 1, Inmate Grievance No. 82114, with the Facility Grievance Coordinator. (Pl.'s Dep. at Exh. Roach 7.) The Facility Grievance Coordinator properly rejected the grievance because it "was not submitted within fifteen (15) working days after the events upon which claims are based."[4] (*Id.*)

On April 29, 2004 plaintiff appealed the Facility Grievance Coordinator's decision to the Secretary's Office of Inmate Grievances and Appeals. (*Id.* at Exh. Roach 8.) Plaintiff's appeal was denied because he had failed to appeal to the Facility Manager of SCI Graterford, an intermediate appeal that must precede a final appeal. (*Id.* at Exh. Roach 10.) Sharon M. Burks, the Chief Grievance Officer, advised plaintiff to file the intermediate appeal with the Superintendent (the Facility Manager), and once a response was received, he could then submit a written appeal for final review to the Secretary's Office of Inmate Grievances and Appeals. (*Id.*)

Instead of following the suggestions of the Chief Grievance Officer, plaintiff filed the instant action, without filing an appeal at the intermediate level. (*Id.* 36–37.) Accordingly, under 42 U.S.C. § 1997e(a), plaintiff's claims fail for failure to exhaust his administrative remedies.[5]

### D. *Deliberate indifference*

■■ Even if plaintiff fully complied with the administrative scheme of 42 U.S.C. § 1997e(a), his claims do not rise to the level of deliberate indifference. A constitutional violation for failure to· provide medical care does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which caused an "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Farmer v. Brennan,* the Supreme Court clarified the state of mind required to show deliberate indifference by holding that,

a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantive risk of serious harm exists and he must also draw that inference.

511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In other words, the court must determine whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious

---

3. Plaintiff contends that his letter to Mr. Murray was an attempt to "[f]irst try to solve the problem by speaking or writing to staff about it," as required by the "Inmate Handbook." (Pl.'s Br. at App. E.) However, this preliminary, informal action does toll the fifteen-day deadline to file a formal grievance.

4. Plaintiff asserts that the Facility Grievance Coordinator improperly rejected his grievance as untimely because his "formal grievance was filed and initiated within fifteen days from the final denial of his informal grievance process." *Id.* at 10. However, the fifteen-day deadline begins when the event

occurs on which the claim is based, not upon rejection of the informal grievance.

5. Plaintiff argued in his brief that his claims should not be barred for failure to exhaust administrative remedies because compliance "would be ineffective and unavailable," as he has already suffered the "physical and mental pain, and the lost [sic] of half of his colon." (Pl.'s Br. 11–12.) The argument is entirely without merit. *See Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Spruill,* 372 F.3d at 227; *Concepcion v. Morton,* 306 F.3d 1347 (3d Cir.2002).

harm." *Id.* at 841, 114 S.Ct. 1970. "Allegations of 'inadvertent failure to provide adequate medical care' or 'negligent ... diagnosis' fail to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).[6]

### 1. Jane and/or John Doe defendants that treated plaintiff during the October 2003 infirmary stay

Plaintiff has been unable to identify the individuals that treated him during his October 2003 infirmary stay. Regardless of their identities, their actions do not rise to the level of deliberate indifference as plaintiff has failed to produce any evidence that they had knowledge of a substantial risk of serious harm.[7]

On October 20, 2003 plaintiff started to experience abdominal pain in his right side. (Pl.'s Dep. 6.) When the pain did not subside, he reported to the SCI Graterford Medical Department for sick call. (*Id.* at 9–10.) On October 23, 2003 a doctor admitted him to the infirmary for observation. (*Id.* at 10.) The doctor gave plaintiff a mixture of Maalox and Donnatal, which stopped the pain. (*Id.*) He was placed on a liquid diet and had his urine tested and his pulse monitored. (*Id.* at 7.) He felt better and on October 25, 2003, he was released from the infirmary and returned to his cell. (*Id.*)

Plaintiff alleges that the medical staff failed to perform any medical tests to diagnose the cause of his abdominal pains, which deprived him of basic medical treatment. (Pl.'s Memo. of Law 4–5) (doc. no. 4). However, plaintiff failed to produce any evidence that the defendants had knowledge of a substantial risk of harm.[8] At the very most, the medical staff was negligent in its diagnosis and treatment. Such conduct does not rise to the level of deliberate indifference.

### 2. Terry Drumheller

Likewise, plaintiff has produced no evidence that Ms. Drumeller knew of a substantial risk of serious harm. Plaintiff alleges that on February 29, 2004 he went to the infirmary because he was experiencing pain. (Pl.'s.Dep.12–13.) The nurse on duty, Ms. Drumheller, checked his blood

---

**6.** Plaintiff cites to the Third Circuit decision of *Monmouth County Corr. Inst. Inmates v. Lanzaro*, which held, "Where prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." 834 F.2d 326, 346 (3d Cir.1987) (citations omitted) (Pl.'s Br. 3.) However, in the instant case, plaintiff does not allege that medical treatment was denied altogether by the prison authorities, but rather that he disagrees with the treatment provided. In these circumstances, according to *Lanzaro*, there is no deliberate indifference. *See Lanzaro*, 834 F.2d at 346 ("Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

**7.** Plaintiff was provided a full opportunity for paper discovery, which was responded to by defendants. Although plaintiff contends that defendants withheld or have failed to produce certain documents, his allegation has been met by a duly-sworn affidavit from the Director of Medical Records at SCI–Graterford, Joan L. Scott (doc. no. 37). An unsubstantiated assertion that an opposing party has not produced all documents in their possession is not sufficient to defeat a motion for summary judgment.

**8.** Plaintiff provided two cryptic documents, entitled "PROGRESS NOTES" and "PHYSICIANS ORDERS," which suggest that the medical staff may have considered the possibility that plaintiff's abdominal pains were symptomatic of appendicitis during his October 2003 infirmary stay. (Pl.'s Br. at App. A & B.) However, even accepting these allegations as true, the failure to act without knowledge of a substantial risk of harm does not rise to the level of deliberate indifference.

pressure, gave him Pepto–Bismol, and advised him to sign up for the next available sick call. (*Id.* at 12.) According to plaintiff, he "stressed to her that he did not have an upset stomach, and it had to be something more serious because of the pain he was in." (Compl.2.) Plaintiff returned to his cell.

Plaintiff alleges that Ms. Drumheller failed to perform the appropriate medical tests and misdiagnosed his abdominal pain. (Pl.'s Memo. of Law 4–5.) However, plaintiff has produced no evidence that Ms. Drumheller knew of the substantial risk of harm to plaintiff. At the very most, Ms. Drumheller was negligent in her diagnosis and treatment. Such conduct does not rise to the level of deliberate indifference.

### 3. Lieutenant Hawkins

Plaintiff alleges that at 2:00 p.m. on February 29, 2004 after returning to his cell from the infirmary, his abdominal pain intensified. (Pl.'s.Dep.15.) Plaintiff stood by the cell door and looked for someone to come and help him. (*Id.*) Plaintiff spotted Lieutenant Hawkins and told her he needed to go to the hospital. (*Id.* at 14.) Lieutenant Hawkins tried to open plaintiff's cell door, but it would not open because all of the doors in the housing unit are "locked down" between 1:45 p.m. and 2:15 p.m., while the guards' shifts are changing. (*Id.* at 15.) Approximately five to ten minutes later, plaintiff's cell door was opened and he walked to the infirmary. (*Id.* at 17.)

Plaintiff contends that "Lt. Hawkins abandoned her duty when she refused/failed to get the plaintiff medical attention." (Pl.'s Memo. of Law 6.) Plaintiff asserts that as a result, he had to go through "prolonged mental anguish ... and physical pain." (*Id.*)

■ Even if plaintiff's contentions are true, Lieutenant Hawkins's actions do not constitute deliberate indifference. Defendants who are not medical personnel are not deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a medical doctor. *See Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993). Rather, for a non-medical prison official to be deemed deliberately indifferent, that individual must believe or have actual knowledge that the prison doctor or their assistants are mistreating the prisoner. *See Spruill,* 372 F.3d at 236 (dismissing claim against corrections officer where there were no allegations that he knew of alleged inadequacies of prisoner's medical treatment).

Here, Lieutenant Hawkins tried to assist plaintiff, but the cell doors could not be opened. As a result, plaintiff's arrival at the infirmary was delayed a mere five to ten minutes. Plaintiff has produced no evidence that Lieutenant Hawkins had any knowledge that the medical personnel mistreated plaintiff. In fact, plaintiff admitted that he did not mention his previous symptoms or treatment to Lieutenant Hawkins. (Pl.'s Dep. 17.) There is no deliberate indifference in these circumstances.

### 4. Ms. Knauer

Ms. Knauer is the supervising health care administrator at SCI Graterford. At plaintiff's deposition, he admitted that Ms. Knauer was not personally involved in the violation. (*Id.* at 19–20.) Plaintiff conceded that she never examined him, nor did she give him any medication. (*Id.*) Rather, plaintiff simply alleges that she should be held responsible because "she's responsible for all the employees [in the Medical Department]." (*Id.* at 21.)

■ Plaintiff's allegations against Ms. Knauer do not constitute a cognizable

claim of deliberate indifference. Civil rights claims cannot be premised on a theory of *respondeat superior. See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Rather, each named defendant must be shown to have been personally involved in the events or occurrence which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir.1976). "[P]ersonal involvement can be shown through [evidence] of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.

In this case, plaintiff does not make any allegations, nor has he produced any evidence, that Ms. Knauer knew plaintiff had a medical emergency or knew of the alleged mistreatment. Ms. Knauer was not personally involved in any of the alleged civil rights violations and she cannot simply be held liable as a supervisor.

### 5. Prison Health Services

Prison Health Services is a private corporation that entered into a contract with the Department of Corrections to provide medical services to inmates. Plaintiff has been unable to identify any specific individuals from Prison Health Services that were deliberately indifferent to his medical needs. Regardless of their identities, the Court sees no instances of deliberate indifference arising from the medical treatment plaintiff received in October 2003 and February 2004.

█ While a private corporation cannot be held vicariously liable for the actions of its staff, it may be held liable if "it knew of and acquiesced in the deprivation of the plaintiff's rights." *Miller v. City of Philadelphia*, No. CIV.A.96–3578, 1996 WL 683827, at *3–4 (E.D.Pa. Nov.26, 1996). To meet this burden with respect to a private corporation, the plaintiff must show that the corporation, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiffs'] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989).

In this case, plaintiff has not produced any evidence that Prison Health Services had a policy or practice that caused harm to plaintiff. Plaintiff has not produced any evidence that Prison Health Services knew of or acquiesced in the utilization of a policy or practice that presented a substantial risk of harm to plaintiff.

### E. State-law medical malpractice claims

█ Because judgment is entered against plaintiff on all federal claims, this Court declines to exercise supplemental jurisdiction over plaintiff's state-law medical malpractice claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

## III. CONCLUSION

Defendants' motions for summary judgment are granted as to all federal claims. Judgment will be entered in favor of defendants and against plaintiff on all federal claims. Having granted summary judgment as to all federal claims, the Court will decline to exercise jurisdiction over the state-law claims and will dismiss them without prejudice. An appropriate order follows.

### ORDER

**AND NOW**, this 4th day of November, 2005, it is hereby **ORDERED** that defendant SCI Graterford Medical Department's motion for summary judgment (doc. no. 38), as to all federal claims against the

SCI Graterford Medical Department, Jane and/or John Does, Terry Drumheller, Angela Hawkins, and Julie Knauer, is granted.

**IT IS FURTHER ORDERED** that defendant Prison Health Services' motion for summary judgment (doc. no. 45) is **GRANTED** as to all federal claims.

**IT IS FURTHER ORDERED** that plaintiff's state-law claims as to all defendants are dismissed without prejudice.

**AND IT IS SO ORDERED.**