FILED
United States Court of Appeals
Tenth Circuit

February 28, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

COHEN-ESREY REAL ESTATE
SERVICES, INC.,

        Plaintiff - Appellant,

v.

TWIN CITY FIRE INSURANCE
COMPANY,

        Defendant - Appellee,

and

HARTFORD FIRE INSURANCE
COMPANY,

        Defendant.

No. 10-3159

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:08-CV-02527-KHV)**

Leonard Rose (Amy Loth Allen, with him on the briefs), Lathrop & Gage LLP,
Kansas City, Missouri, for Plaintiff - Appellant.

William James Foland, Foland, Wickens, Eisfelder, Roper & Hofer, P.C., Kansas
City, Missouri, for Defendant - Appellee.

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

**HARTZ**, Circuit Judge.

Cohen-Esrey Real Estate Services, Inc. (Cohen-Esrey) appeals the district court's award of summary judgment to Twin City Fire Insurance, Inc. (Twin City). Cohen-Esrey's claims arose from Twin City's failure to indemnify it under a claims-made errors-and-omissions policy for liability caused by its employee, Brenda Phillips. The district court held that the policy precluded indemnification because on the policy-inception date Cohen-Esrey was aware of circumstances that it could reasonably have foreseen might result in a claim under the policy. The district court had jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction). We have appellate jurisdiction under 28 U.S.C. § 1291 and, agreeing with the district court, we affirm.

## I.    BACKGROUND

Cohen-Esrey managed the Quail Ridge Apartments in El Dorado, Kansas, for its owner, HJS Realty, LLC. The Department of Housing and Urban Development (HUD) subsidized the rent of qualifying Quail Ridge tenants to the extent that it exceeded 30% of the tenant's income. Phillips was Cohen-Esrey's on-site property manager at Quail Ridge from March 19, 2001, until September 15, 2006. In that capacity she was responsible for the day-to-day operations of the property, including the submission to HUD of documents reflecting who the tenants were and their incomes.

From 2004 to 2006, Phillips conducted a fraudulent scheme to embezzle money from Quail Ridge. When a qualified tenant moved out of a unit, Phillips would transfer a qualified tenant from a second unit into the vacated unit and place an unqualified tenant in the second unit. She then falsified the lease and HUD verification forms for the units to show qualified tenants living in both apartments and kept for herself the amount paid by the unqualified tenant in excess of the subsidized rental rate.

The scheme was accidentally detected in September 2006 when Phillips was out sick and her substitute was asked for a key by someone who claimed to be a tenant but was not on the rent roll. Soon thereafter Cohen-Esrey notified its insurance carriers. On September 28 it submitted a notice of claim under its Hartford Fire Insurance Company crime policy, which covered employee theft. And on October 30 it submitted a "General Liability Notice of Occurrence/Claim" under its errors-and-omissions policy with Nutmeg Insurance Company, informing Nutmeg of "circumstances that may give rise to a claim." J. App., Vol. 1 at 227. Both notices said: "Apartment property manager embezzled cash from rents. Loss is approx. $260K." *Id.* at 198 (Hartford claim); *see id.* at 227 (Nutmeg notice). Cohen-Esrey did not, however, inform Twin City of the fraud before November 1, 2006, when the Twin City errors-and-omissions policy replaced the Nutmeg policy.

The scheme was not Phillips's first misconduct while employed by Cohen-Esrey. In September 2004 she used a company account to make a personal purchase of $115 and then denied the misconduct. Cohen-Esrey required her to repay the money and reprimanded her on January 6, 2005.

On June 7, 2007, HJS wrote Cohen-Esrey a letter demanding that it pay for the losses to HJS and HUD from Phillips's scheme because Cohen-Esrey had been negligent in the retention and supervision of Phillips. The letter referred to Phillips's prescheme fraudulent use of a company account to pay personal expenses and pointed out that Cohen-Esrey had retained her as property manager without further investigating her financial activities.

Cohen-Esrey submitted a claim under its errors-and-omissions policy with Twin City, but Twin City denied coverage. Cohen-Esrey then filed a complaint against Twin City in the United States District Court for the District of Kansas, alleging claims for breach of contract, bad-faith refusal to pay, and money owed/reimbursement.[1] Twin City moved for summary judgment on several grounds. But we need consider only the ground on which the district court based its summary-judgment ruling. The court agreed with Twin City that there was no coverage because of the failure to satisfy the policy's condition precedent that at the policy's inception Cohen-Esrey "was [not] aware of [a] Wrongful Act, fact,

---

[1]Cohen-Esrey also brought claims against Hartford. Hartford won at trial, but Cohen-Esrey's appellate briefs do not challenge the judgment in Hartford's favor.

circumstance or situation that [it] knew or could reasonably have foreseen might result in a Claim under this Policy." J. App., Vol. 1 at 155.

## II. DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *See Jensen v. Solvay Chemicals, Inc.*, 625 F.3d 641, 650 (10th Cir. 2010) (internal quotation marks omitted). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009). "We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009) (internal quotation marks omitted).

In this diversity action we apply the substantive law of the forum state, Kansas. *See id.* Kansas courts interpret the provisions of insurance contracts as follows:

> First, a court should consider the instrument as a whole and try to ascertain the parties' intention from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. Second, if a provision is ambiguous, the insurance policy language is tested by what a reasonably prudent insured would understand the language to mean, not by what the insurer intended the language to mean. Third,

-5-

> limiting or exclusionary insurance provisions are to be construed narrowly against the insurer.

*Am. Special Risk Mgmt. Corp. v. Cahow*, 192 P.3d 614, 621 (Kan. 2008) (citations omitted).

Cohen-Esrey's errors-and-omissions policy with Twin City was a claims-made liability policy that covered both loss and defense costs. "Under a claims-made policy, coverage is only triggered when, during the policy period, an insured discovers and notifies the insurer of either claims against the insured or occurrences that might give rise to such claims." *Id.* In contrast, under an occurrence policy, "coverage becomes effective if the negligent or omitted acts occur *during* the term of the policy." *Id.* The Twin City policy covered losses that Cohen-Esrey "shall become legally obligated to pay . . . resulting from Claims first made against the Insured during the Policy Period . . . for a Wrongful Act by the Insured, or an Entity for whom an Insured Entity is legally responsible . . . ." J. App., Vol. 1 at 155. The policy defines a *Wrongful Act* as "any actual or alleged negligent act, error or omission in the rendering of or failure to render Professional Services." *Id.* at 158.

The policy provision central to the parties' dispute is in § I. It states that "as [a] condition[] precedent to coverage hereunder[,] . . . as of the inception date no partner, principal, officer, director, or member of the Insured was aware of any Wrongful Act, fact, circumstance or situation that he or she knew or could

-6-

reasonably have foreseen might result in a Claim under this Policy." *Id.* at 155.

Such prior-knowledge conditions are common in claims-made policies because

they "ensure that only risks of unknown loss are potentially incurred," *Cahow*,

192 P.3d at 621, and prevent an insured from "obtain[ing] coverage for the risk of

a known loss," *id.* at 622, which would be unfair to the insurer.

As the parties agree, the Kansas Supreme Court applies what it terms a

two-prong, subjective-objective test to determine whether a prior-knowledge

condition has been satisfied. *See id.* at 628. The subjective prong is "whether the

insured knew of certain facts." *Id.* at 625. In *Cahow* the objective prong,

tracking the language of the application for the policy, was "whether such facts

could reasonably have been expected to give rise to a claim." *Id.* at 625.[2] The

objective prong in this case would accordingly be whether Cohen-Esrey "could

reasonably have foreseen [that the facts known to it] might result in a Claim

under th[e] Policy." J. App., Vol. 1 at 155.

Twin City contends that the prior-knowledge condition was not satisfied

because of the facts indisputably known to Cohen-Esrey by November 1, 2006,

the inception date of the policy. First, Cohen-Esrey knew in September 2006 that

Phillips had engaged in a scheme to defraud HUD and HJS. Second, it knew that

Phillips had fraudulently used a Cohen-Esrey company account to pay personal

---

[2]The application asked whether there were "any facts, circumstances or situations involving the Applicant . . . which could reasonably be expected to give rise to a claim." *Cahow*, 192 P.3d at 618.

expenses of $115 in September 2004, and then lied to Cohen-Esrey about doing so, yet Cohen-Esrey had retained her and taken no steps to oversee her work more carefully. From these facts, argues Twin City, any reasonable insured would anticipate that the victims of Phillips's fraud might claim that Cohen-Esrey had negligently retained and supervised Phillips.

On appeal Cohen-Esrey argues that a proper analysis requires consideration of a number of additional facts under the subjective prong of the Kansas test. It asserts that it knew the following: (1) that Phillips had been disciplined on January 6, 2005, for her improper charge to a company account; (2) that Phillips reimbursed Cohen-Esrey and neither Cohen-Esrey, HUD, nor HJS suffered a loss from that misconduct; (3) that Quail Ridge passed a HUD audit every year of Phillips's embezzlement, including 2006; (4) that the January 2005 incident "did not flag any internal control violation or trigger an audit," Aplt. Br. at 22; (5) that Kansas Housing Resources Corporation, which handled oversight of Quail Ridge for HUD, performed a management and occupancy review two or three times and Quail Ridge passed each time; (6) that the tenant files prepared by Phillips were approved by Cohen-Esrey's central compliance procedures; (7) that the Federal Home Loan Bank issued a compliance memo on September 6, 2006, that deemed Quail Ridge to be "in compliance with . . . Federal Regulations for Long-term Monitoring," *id.*; (8) that the compliance memo was transmitted to HJS; (9) that Cohen-Esrey submitted a notice of claim under its crime policy with Hartford;

-8-

and (10) that Cohen-Esrey's submission in October 2006 of a notice of circumstances to Nutmeg (its errors-and-omissions carrier at the time) was in accordance with its regular practice of reporting occurrences to its insurance carriers.

Cohen-Esrey contends that consideration of these facts would render unforeseeable a claim against it of negligent retention and supervision. It points out (1) that the company did not believe it was negligent and did not know how it could have prevented Phillips's embezzlement beyond employing the internal and external controls already in place, and (2) that Phillips testified that she did not know how her scheme would have been detected had she not been out sick. Further, Cohen-Esrey argues that the question of foreseeability is ordinarily a question of fact for the jury and can be determined as a matter of law "[o]nly when reasonable persons could arrive at but one conclusion." *Kansas State Bank & Trust Co. v. Specialized Transp. Servs. Inc.*, 819 P.2d 587, 598 (Kan. 1991).

We are not persuaded. Cohen-Esrey knew that Phillips had defrauded HUD and HJS and that she had previously been caught engaging in theft and dishonesty yet had not been fired or subjected to stricter oversight. To be sure, a claim against Cohen-Esrey for negligent retention and supervision was not a certainty. But any reasonable insured under such a professional errors-and-omissions policy would know that a claim of such negligence was more than colorable. Certainly

any insured "could reasonably have foreseen [that these facts] *might result* in a Claim under this Policy." J. App., Vol. 1 at 155 (emphasis added).

Cohen-Esrey misses the point when it focuses on whether it could reasonably have predicted that Phillips would engage in her fraudulent scheme. True, not everyone who steals $115 will engage in a much larger and more complicated embezzlement scheme. And the failure of several external and internal audits and controls to detect her scheme may have given Cohen-Esrey a sense of security about Phillips's virtue. But these observations are most relevant to whether Cohen-Esrey was in fact negligent in retaining Phillips and not monitoring her more closely, not to whether a victim of Phillips's scheme would *claim* that Cohen-Esrey bore responsibility. Only if a reasonable insured would have concluded that Cohen-Esrey had a sure and obvious defense to a negligent-retention-and-supervision claim—a defense so sure and obvious that a victim would very likely not bother to make the claim—would the policy's condition precedent be satisfied. It would not be satisfied simply by a showing that a claimant would likely lose. After all, it bars coverage if Cohen-Esrey was aware of facts or circumstances from which it was reasonably foreseeable that a *claim* "*might result*." *Id.* at 155 (emphasis added). The threat of a claim, even an unfounded one, is relevant to the insurer's exposure, because defense costs, which can be quite substantial, are covered by the policy even when the claim against the insured proves unsuccessful. The reality of modern American litigation,

-10-

which is what insurance policies are designed to protect against, is that persons must be prepared to defend against colorable albeit invalid claims.

The Third Circuit has construed a prior-knowledge exclusion to require almost a certainty that no claim would be pursued against the insured. *See Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302 (3d Cir. 2001). The insured attorneys argued that the exclusion did not apply because the limitations period had expired on the potential claim before the effective date of the policy. *See id.* at 307. A claim against the insureds was not covered by the policy if it arose out of an act occurring before the policy effective date and if the insured attorney, before the effective date, "could have reasonably foreseen that such act . . . might be expected to be the basis of a CLAIM." *Id.* at 304. The exclusion may not have been as broad as Twin City's because it included the words *be expected*; one could read "might be expected to be the basis of a CLAIM" to require a greater likelihood of a claim than does the Twin City language "might result in a Claim." J. App., Vol. 1 at 155. Yet the court ruled that the exclusion was broad enough to bar coverage. It said:

> When an attorney has a basis to believe he has breached a
> professional duty, he has a reason to foresee that his conduct might
> be the basis of a professional liability claim against him. He cannot
> assume that the claim will not be brought because he *subjectively*
> believes it is time barred or lacks merit.

*Coregis Ins. Co.*, 264 F.3d at 307. It further elaborated:

-11-

> In our view, a reasonable attorney in [the insureds'] position could not have been certain, and thus should not have assumed, that the limitations period had expired as a matter of law. Rather, a reasonable attorney would have foreseen that there *might* be the basis for a claim because the statute of limitations may have been tolled . . . under the discovery rule.

*Id.* at 308. Likewise, the New York Court of Appeals observed when applying the objective prong to language in an insurance contract similar to Twin City's that the insured need not actually be liable, saying, "the prior knowledge exclusion in this case does not require the known-of act, error, omission or circumstance to be wrongful conduct on the part of the insured." *Exec. Risk Indem. Inc. v. Pepper Hamilton LLP*, 919 N.E.2d 172, 13 N.Y.3d 313, 323 (N.Y. 2009) (internal quotation marks omitted) (construing provision excluding coverage if insured "could have reasonably foreseen that [circumstance known to it] might be the basis of a CLAIM"); *see Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 255 F. App'x 593, 594 (2d Cir. 2007) (unpublished) ("even a low probability of suit would trigger" the exclusion).

Cohen-Esrey cites several cases in which the insurer unsuccessfully sought to invoke a prior-knowledge provision to preclude coverage. But we do not find them persuasive. All but one are unhelpful because the court did not apply the subjective-objective test adopted in Kansas or because the policy required a greater likelihood of a claim being brought than did the Twin City policy, which required only reasonable foreseeability that a claim *might* result. The remaining

-12-

case is distinguishable on other grounds. In *Westport Ins. v. Ray Quinney & Nebeker*, No. 2:07-CV-236-TC, 2009 WL 2474005 (D. Utah Aug. 7, 2009), the court denied summary judgment to the insurer because of a dispute regarding a critically important fact under the *subjective* prong. The claim against the insured law firm was that it had committed malpractice in providing legal services for a kidney-transplant program. *See id.* at *1. The factual issue was whether the firm subjectively knew at the relevant time that it had in fact provided such services. *See id.* at *6.

Cohen-Esrey may have had a plausible defense to a claim, but it was not one that was particularly likely to deter a victim from suing. We therefore hold that the prior-knowledge condition barred coverage under the Twin City policy. Twin City was entitled to summary judgment because no reasonable person could find, on this record, that the condition precedent was satisfied.[3]

---

[3]Cohen-Esrey implies in its opening brief that Twin City had received some sort of pre-inception-date constructive notice of the circumstances of Phillips's embezzlement through the notice filed by Cohen-Esrey with Nutmeg. But Cohen-Esrey did not make this argument in district court, and the argument is therefore forfeited on appeal. *See Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1232–33 (10th Cir. 1997).

Also, Cohen-Esrey argues in its reply brief that HJS's claim was not reasonably foreseeable at the time of the Twin City policy's inception because Cohen-Esrey had not yet conducted a full investigation into the effect of Phillips's scheme and therefore did not know that HJS had actually suffered any losses. This argument comes too late. "This court does not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

## III.   CONCLUSION

We AFFIRM the district court's judgment.