**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 2, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MELISSA LEIGH TOPPINS,

Plaintiff-Appellant,

v.

MINNESOTA LIFE INSURANCE
COMPANY,

Defendant-Appellee.

No. 11-5062
(D.C. No. 4:10-CV-00426-GKF-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

Melissa Leigh Toppins appeals the district court's summary judgment in

favor of Minnesota Life Insurance Co. ("Minnesota Life") on her claims that

Minnesota Life breached the duty of good faith and fair dealing by not paying her

the proceeds of a life insurance policy for 47 days after its receipt of her claim.

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Ms. Toppins's husband Timothy Toppins took out a million-dollar life insurance policy with Minnesota Life. The policy was issued on August 26, 2008. Mr. Toppins was killed when the private aircraft in which he was a passenger crashed on February 28, 2010. Ms. Toppins submitted the necessary claim form and death certificate, which Minnesota Life received on March 17, 2010. Also on March 17, 2010, because Mr. Toppins had died within two years of the policy issue date, Minnesota Life began a routine investigation by referring its investigation to a third-party vendor who, in turn, requested Joe Jolly to interview Ms. Toppins. Mr. Jolly then interviewed Ms. Toppins by telephone on March 23, 2010.

Legal counsel for Ms. Toppins became involved on March 29, 2010, and directed Mr. Jolly to contact him, not Ms. Toppins. On March 31, 2010, Mr. Jolly sent to counsel his report and a medical information release form, asking that Ms. Toppins sign them. Rather than have his client sign the documents, counsel demanded immediate payment and disputed Minnesota Life's right to conduct an investigation. Counsel filed the underlying lawsuit in Oklahoma state court on April 22, 2010.

On April 27, 2010, Ms. Toppins's counsel informed Minnesota Life that his client did not have any changes to Mr. Jolly's proposed written report. Based on that representation and without requiring Ms. Toppins to sign the statement or

provide medical authorizations, on April 29, 2010, Minnesota Life determined

that it would pay the policy, and contacted its reinsurer to confirm the decision.

On April 28 and 29, 2010, Minnesota Life informed Ms. Toppins's attorney that it

was awaiting confirmation from its reinsurer. On Friday, April 30, 2010, the

reinsurer confirmed the payment decision and on the following Monday, May 3,

2010, Minnesota Life sent a check in the amount of $1,007,043.76 to

Ms. Toppins, which represented the one-million dollar policy amount plus

statutory interest.

Minnesota Life removed the lawsuit to federal court based on diversity

jurisdiction. *See* 28 U.S.C. § 1332(a). Eventually, the district court granted

Minnesota Life's motion for summary judgment, concluding that Minnesota Life

did not act unreasonably or in bad faith. Ms. Toppins appeals, asserting that

summary judgment was improper on her claim that Minnesota Life breached the

duty of good faith and fair dealing.[1]

## Standards of Review

"We review the district court's grant of summary judgment de novo,

applying the same standards that the district court should have applied."

*Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300,

---

[1]    Ms. Toppins has waived all other claims by not arguing them in her appellate briefs. Issues not argued to the appellate court are deemed waived. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 n.4 (10th Cir. 2002).

1302 (10th Cir. 2011) (internal quotation marks omitted).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."  *Cohen-Esrey Real Estate Servs., Inc.*, 636 F.3d at 1302 (internal quotation marks omitted).  In this diversity case, we must "apply Oklahoma law with the objective that the result obtained in the federal court should be the result that would be reached in an Oklahoma court."  *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998) (internal quotation marks omitted).

**Analysis**

Ms. Toppins challenges the district court's conclusion that Minnesota Life did not act unreasonably or in bad faith.  She argues that Minnesota Life breached its duty of good faith and fair dealing as follows:  (1) it delayed payment while waiting for the reinsurer's confirmation of its decision to pay, (2) it delayed payment while it waited for Ms. Toppins to sign her statement and complete the medical records authorizations, (3) it engaged in a standard practice of conducting underwriting review after an insured's death, and (4) it did not pay on the policy within 30 days of receipt of the claim.  Ms. Toppins further argues that under Oklahoma law, the question of whether an insurance company has violated the duty of good faith and fair dealing is a jury question, disputed material facts

-4-

precluded summary judgment, the fact that Mr. Jolly destroyed his interview notes gives rise to a negative inference, and she was entitled to damages.

In Oklahoma, tort liability for breach of the implied covenant of good faith and fair dealing requires "a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Christian v. Am. Home Assurance Co.,* 577 P.2d 899, 905 (Okla. 1977). The essence of the tort is failing to promptly pay a claim "unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991). "[T]o determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Newport v. USAA*, 11 P.3d 190, 198 (Okla. 2000) (internal quotation marks omitted). To make out a prima facie case against an insurance company for a bad faith delay in payment, a plaintiff must establish:

> (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith claim.

*Beers v. Hillory*, 241 P.3d 285, 292 (Okla. Civ. App. 2010) (internal quotation marks omitted). Ms. Toppins has the burden of proof. *McCorkle v. Great*

*Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

Ms. Toppins claims that Minnesota Life unreasonably withheld payment in bad faith by seeking its reinsurer's confirmation of its decision to pay. She contends that she was not a party to any contract between Minnesota Life and its reinsurer and the delay of four business days was unreasonable. We disagree with both of Ms. Toppins's contentions, particularly because she has cited no authority for her proposition that an insurer is not entitled to take a few days to confer with its reinsurer. It was not unreasonable for Minnesota Life to obtain confirmation from its reinsurer, nor was the four-day delay unreasonable.

Next, Ms. Toppins objects to Minnesota Life's decision to delay payment pending her signature on the statement she gave to investigator Jolly and completion of the medical records authorizations. She asserts that the policy did not allow for an investigation, so she was not required to sign these documents. But because Mr. Toppins died within two years of the policy issue date, the policy's provision concerning incontestability applied. That provision provided for the policy to become incontestable, except for nonpayment of premiums, after it "has been in force during the insured's lifetime for two years from the policy date." Aplt. App. 130; *see also* Okla. Stat. tit. 36, § 4004 ("There shall be a provision that the policy . . . shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two (2) years from its date of issue."). "It was not bad faith for [Minnesota

-6-

Life] to investigate a claim when the insured died within the two year incontestable period." *Marshall v. Universal Life Ins. Co.*, 831 P.2d 651, 653 (Okla. Ct. App. 1991).

Ms. Toppins next asserts that Minnesota Life breached its duty of good faith and fair dealing by engaging in a standard practice of conducting underwriting review after an insured's death. We must reject this claim. "The tort of bad faith breach of an insurance contract must be based upon an insurer's wrongful denial of a claim; it cannot be based upon the conduct of the insurer in selling and issuing the policy." *Hays v. Jackson Nat'l Life Ins. Co.*, 105 F.3d 583, 590 (10th Cir. 1997) (citing *Claborn v. Washington Nat'l Ins. Co.*, 910 P.2d 1046, 1051 (Okla. 1996)). Therefore, any evidence that Minnesota Life engaged in post-death underwriting was irrelevant to the issue of whether Minnesota Life acted tortiously in paying Ms. Toppins's claim. *See id.*

Ms. Toppins complains that Minnesota Life did not pay on the policy within 30 days of receipt of the claim, thus demonstrating its bad faith. She relies on Okla. Stat. tit. 36, § 4030.1(B), which provides: "An insurer shall pay the proceeds of any benefits under a policy of life insurance not more than thirty (30) days after the insurer has received proof of death of the insured. If the proceeds are not paid within this period, the insurer shall pay interest on the proceeds . . . ." Although Ms. Toppins does not assert that an insurance company's failure to pay within 30 days is automatically bad faith, she says that

the statute, coupled with evidence that Minnesota Life's employees were unaware of it, does show bad faith. We disagree; under the circumstances of this case, we conclude that the payment of the full amount of the life insurance policy, plus interest, 47 days after receipt of proof of death did not constitute bad faith. *Cf. Hall v. Globe Life and Accident Ins. Co.*, 998 P.2d 603, 604, 605 (Okla. 1999) (judgment was entered in claimant's favor three years after insured's death; applying section 4030.1 to "the issue of late payment of insurance proceeds").

Ms. Toppins contends that disputed material facts precluded entry of summary judgment. She relies on the following allegedly disputed facts: (1) whether investigator Jolly's written report reflected everything they discussed during the telephone interview, and (2) whether Mr. Jolly's questions had "started to get badgering." Aplt. Opening Br. at 30. Aside from the fact that Ms. Toppins had ample opportunity to correct Mr. Jolly's report, she has failed to demonstrate why any omissions were material. Similarly, her complaint that she may have felt badgered does not preclude summary judgment on her bad-faith claim because it is irrelevant to the delay in payment. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1176 (10th Cir. 2005) (holding disputed fact must be *material* to avert summary judgment). In addition, her assertion that Mr. Jolly's destruction of his interview notes entitles her to an adverse inference is unavailing. She has not shown that she sought sanctions under Fed. R. Civ. P. 37; accordingly, she is limited to "seek[ing] sanctions under a spoliation of evidence theory [which

-8-

requires] proo[f] of bad faith" where "the aggrieved party seeks an adverse inference." *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations omitted). Ms. Toppins had not made a showing that Mr. Jolly, or anyone else, destroyed the notes in bad faith.

## Conclusion

We conclude that no reasonable jury could find in favor of Ms. Toppins on her claim that Minnesota Life violated the duty of good faith and fair dealing. Consequently, she was not entitled to compensatory or punitive damages. The district court's judgment in favor of Minnesota Life is therefore AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge