[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14506
Non-Argument Calendar

_____

D.C. Docket No. 8:16-cv-03466-WFJ-JSS

BERKLEY ASSURANCE COMPANY,

Plaintiff - Appellee,

versus

EXPERT GROUP INTERNATIONAL INC.,
d.b.a. Expert Au Pair,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 27, 2019)

Before WILSON, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

In this insurance-coverage dispute, Berkley Assurance Company ("Berkley") sought a declaratory judgment that a "prior-knowledge" exclusionary clause applies to prevent it from having to defend or indemnify its insured, Expert Group International Inc., doing business as Expert Au Pair ("Expert Au Pair"), against claims brought by a former client of Expert Au Pair. Because we conclude that the prior-knowledge exclusion applies, we affirm the district court.

## I.

Expert Au Pair is a federally designated sponsor for the J-1 Au Pair Program, an exchange program offered by the U.S. State Department. The program allows foreign nationals aged 18-26 to work for "host families" in the United States as child-care workers for up to 45 hours per week in exchange for room, board, a legal wage, and a small stipend for academic coursework. The State Department approves private-sector "sponsors" to administer the program. Sponsors handle the screening, training, placement, and monitoring of au pairs and host families. Expert Au Pair was designated as a sponsor by the State Department in 2007. It is one of the smallest sponsors in the program.

In October 2016, a former au pair client sued Expert Au Pair for negligent misrepresentation of applicable minimum-wage laws, among other claims. Expert Au Pair believed that this claim was covered by its Berkley Errors and Omissions ("E&O") liability-insurance policy, which covered negligence claims against Expert

2

Au Pair in connection with the rendering of professional services. But Berkley refused to defend Expert Au Pair and filed this action for declaratory relief, claiming that the lawsuit was not covered because Expert Au Pair had knowledge of the grounds for the lawsuit before the inception date of the policy. To give context to this dispute, we begin with a summary of the relevant factual and procedural history.

## A.

On November 13, 2014, Expert Au Pair was named as a defendant—along with every other federally designated sponsor—in a federal class-action lawsuit (the "Beltran case") filed in Colorado by an au pair who had participated in the J-1 Au Pair Program. Count I of the complaint—the only count in which Expert Au Pair was named as a defendant—asserted on behalf of all au pairs in the program an illegal price-fixing claim against all sponsors under the Sherman Act, 15 U.S.C. §§ 1 *et seq.* According to the complaint, the sponsors conspired to set au pair wages at the absolute minimum they believed was allowable under the Fair Labor Standards Act. But, according to the complaint, not only was this minimum amount—$195.75 per week—misrepresented by the sponsors as a fixed wage rather than a wage floor, it was illegal as a matter of federal and state minimum-wage laws. In addition to the price-fixing count, the complaint contained additional wage-related counts against the named plaintiff's sponsor (not Expert Au Pair) and her host family.

3

An amended complaint was filed in March 2015, adding three more au pairs as named plaintiffs, expanding on the underlying factual allegations, and raising additional claims. Notably, it alleged, in its general "Statement of Facts," that several sponsors had admitted that "[e]ach and every Sponsor conspired to reach an agreement on standard *au pair* wages" and "agreed to ensure that host families pay [$195.75 per week], no more," regardless of the location of the host family, the number of children in the host family, or minimum-wage laws. To maintain the price-fixing scheme, according to the amended complaint, the sponsors falsely informed au pairs that $195.75 was a maximum wage or a wage fixed by the government and not a wage floor. Furthermore, the complaint alleged, "It is not possible to differentiate between the Sponsors on the weekly wage amount because, by agreement, they all offer standard au pairs positions with host families at the same amount." The complaint noted, for example, that Expert Au Pair's website, like the websites of other sponsors, advertised au pair services under the program for the weekly rate of $195.75.

The new claims in the amended complaint included a claim of negligent misrepresentation of the laws of several states and the District of Columbia. This claim was brought by the four named plaintiffs against their respective sponsors on their own behalf and on behalf of a class. They alleged that the sponsors entered into special relationships with vulnerable au pairs but then misstated material facts

4

about the legality and set nature of the wages, causing the au pairs to receive wages below the minimums required by law. Again, Expert Au Pair was a defendant with respect to only the price-fixing count.

More than a year later, in October 2016, the plaintiffs in the Beltran case filed a second amended complaint to add four more au pairs as named plaintiffs. The second amended complaint raised allegations specific to these four plaintiffs but substantially similar to those alleged by the existing plaintiffs. One of these new plaintiffs, Nicole Mapledoram, was sponsored by Expert Au Pair during her participation in the J-1 Au Pair Program from April 2014 to April 2016. Like the other named plaintiffs, Mapledoram brought a claim against Expert Au Pair, on behalf of herself and on behalf of a class, for negligent misrepresentation of applicable minimum-wage laws, among other claims.

Eventually, near the end of 2018, the parties reached a settlement of all claims. As of the date of this opinion, the parties are awaiting district-court approval of the settlement agreement.

**B.**

On February 2, 2015, after being served with a copy of the initial Beltran complaint, Expert Au Pair submitted a notice of loss to Colony Insurance Company, its E&O insurer before Berkley. Colony agreed to defend the suit under a reservation of rights, though it later filed a declaratory-judgment action against Expert Au Pair.

5

Two days after submitting the notice of loss to Colony, Expert Au Pair applied for "claims-made" E&O liability insurance with Berkley. Dr. Mark Gaulter, Expert Au Pair's founder, prepared the application and answered "No" to this question:

23.  Is the Applicant or any principal, partner, owner, officer, director, employee, manager or managing member of the Applicant or any person(s) or organization(s) proposed for this insurance aware of any fact, circumstance situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under the proposed insurance?

Berkley issued an E&O policy (#VUMC0080320) to cover the period of February 14, 2015, to February 14, 2016. It later issued a renewal policy (#VUMC0080321) covering the period of February 14, 2016, to February 14, 2017, based on a similar insurance application by Dr. Gaulter.

Both policies provided that Berkley "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of a negligent act, error or omission in the rendering of or failure to render 'professional services' for others for a fee, provided always that" several conditions were met. Two conditions are relevant here. The first is that "[t]he 'claim' on account of such negligent act, error or omission is first made against the insured during the policy period and reported to us . . . as soon as practicable." The second is what we refer to as the "prior-

6

knowledge exclusion,"[1] which stated, "As of the inception date of this policy, no insured had any knowledge of any circumstance likely to result in or give rise to a "claim" nor could have reasonably foreseen that a "claim" might likely be made."

When in January 2016 Expert Au Pair requested that Berkley defend it against the Colony declaratory-judgment action, Berkley reviewed the underlying materials and then declined to provide coverage, citing the prior-knowledge exclusion. Soon after, Dr. Gaulter prepared the application to renew Expert Au Pair's E&O coverage with Berkley. Then, after the second amended Beltran complaint was filed—which included Mapledoram's negligence claim against Expert Au Pair—Berkley filed this action for declaratory relief.

On cross-motions for summary judgment, the district court granted Berkley's motion and denied Expert Au Pair's motion. The court concluded that, given the course of proceedings in the Beltran case, Expert Au Pair had sufficient prior knowledge of the grounds for Mapledoram's claims that the prior-knowledge exclusion applied to bar coverage. Expert Au Pair now appeals.

**II.**

---

[1] Berkley calls this condition a "limitation" rather than an "exclusion." To the extent there is any meaningful difference between the two terms, we treat the condition as an "exclusion" for purposes of this opinion.

7

We review *de novo* the district court's grant of summary judgment, applying the same standards as the district court.  *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163 (11th Cir. 2017).   Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under Florida law, which governs this diversity action[2], the "interpretation of a contract is a question of law subject to de novo review."  *Horizons A Far, LLC v. Plaza N. 15, LLC*, 114 So. 3d 992, 994 (Fla. Dist. Ct. App. 2012).   Contract interpretation is governed by the intent of the parties, which is "determined from the plain language of the agreement and the everyday meaning of the words used" in view of the contract as a whole.  *Id.*; *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 958 (Fla. Dist. Ct. App. 2015).  "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous."  *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).  Ambiguous provisions are construed against the drafter and in favor of the insured.  *Id.*

---

[2] *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010) (in diversity cases, "state law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress").

When interpreting contract language, we construe exclusionary clauses "more strictly than coverage clauses." *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. Dist. Ct. App. 2011). Nevertheless, "[a]n unambiguous policy provision is enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Southern-Owners Ins. Co.*, 872 F.3d at 1164 (quotation marks omitted); *see Keen v. Fla. Sheriffs' Self-Insurance Fund*, 962 So. 2d 1021, 1024 (Fla. Dist. Ct. App. 2007) (stating that if the complaint clearly shows "the applicability of a policy exclusion, the insurer has no duty to defend"). "The burden of proving an exclusion to coverage" in Florida is "on the insurer." *LaFarge v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).

## III.

Expert Au Pair maintains that Berkley was required to defend it against Mapledoram's lawsuit because her negligent-misrepresentation claim falls within the E&O coverage afforded by Berkley. The prior-knowledge exclusion does not apply, according to Expert Au Pair, because the Beltran case was based on a different factual predicate than Mapledoram's claim—intentional conduct and negligence, respectively—and the possibility that Expert Au Pair would be sued for negligence in that case was, for various reasons, exceedingly small. Expert Au Pair contends that the prior-knowledge exclusion must be strictly construed and that the district court's broad interpretation of the exclusion rendered coverage illusory.

9

## A.

To evaluate whether Expert Au Pair had prior knowledge within the meaning of the exclusion, we must first define the relevant time period.  Only knowledge "as of the inception date of this policy" matters for purposes of the exclusion.  So what is meant by "this policy"?

In Expert Au Pair's view, its Berkley insurance coverage "should be construed as one continuous insurance policy."  Based on this interpretation, Expert Au Pair maintains that the "inception date of this policy" was in February 2015, when the initial policy went into effect, so we must limit our view to its knowledge as of February 2015.  Berkley, for its part, contends that the initial and renewal policies were discrete and separate contracts.  Because the claim was made during the renewal policy period, Berkley argues, the relevant inception date was in February 2016.

We agree with Berkley.  The insurance contracts clearly contemplate that each policy is distinct for purposes of determining coverage.  The two policies have distinct policy numbers and policy periods. The initial policy (#VUMC0080320) ran from February 2015 to February 2016, while the renewal policy (#VUMC0080321) ran from February 2016 to February 2017.  Further, coverage limits and premiums are defined with respect to the respective policy period.  Plus, each policy contains the same coverage conditions, including the prior-knowledge

10

exclusion.   For these reasons, we cannot reasonably interpret the singular and specific phrase "this policy" to refer to multiple policies or to coverage as a whole. Rather, the "inception date of this policy" refers to the specific policy under which coverage is sought.

Because Mapledoram's claims were "first made against the insured during the policy period" of the renewal policy, in October 2016, the relevant policy is the renewal policy.   We therefore look to Expert Au Pair's knowledge "[a]s of the inception date" of that policy—February 14, 2016—in determining the applicability of the prior-knowledge exclusion.

Expert Au Pair's reliance on *Cast Steel Products, Inc. v. Admiral Insurance Co.*, 348 F.3d 1298 (11th Cir. 2003), is misplaced.   *Cast Steel* was about whether a claim that accrued within an initial policy period but was not reported until the renewal policy period was covered by either policy, since coverage was afforded only for "claims both accruing and reported during the specified policy period."  *See id.* at 1301–02.  Observing that the initial policy automatically extended by thirty days the reporting period if the insured elected to cancel or non-renew the policy, we held that it was ambiguous as to whether this extended reporting clause likewise "automatically extend[ed] the reporting period through renewal."  *Id.* at 1303–04. We noted that a contrary result would present a trap for those continuing to do

11

business with the same insurer. *Id.* at 1304. We therefore concluded that the claims were covered by the initial policy and its implied extended reporting period. *Id.*

Expert Au Pair fails to explain how *Cast Steel* applies here. The dispute in this case does not appear to concern reporting periods. Expert Au Pair makes no clear argument that Mapledoram's claims, which were "first made against the insured during the policy period" of the renewal policy and reported within that same policy period, should be considered as having been made during the initial policy.[3] So we fail to see the significance of the extended reporting clause in the Berkley policies. Nor does *Cast Steel* otherwise suggest that we should construe the Berkley policies as one continuous policy. On the contrary. *Cast Steel* is premised on the idea that the original and renewal polices were separate contracts and did not simply create one continuous policy. *See id.* at 1301–03. Otherwise, it would have been unnecessary to imply in the initial policy an automatic extended reporting period.

For the first time on appeal, Expert Au Pair contends that Berkley argued at summary judgment a different theory than alleged in the complaint. According to

---

[3] The E&O policies here contemplate that if an insured reports "a negligent act, error or omission likely to result in a 'claim'" during the policy period or extended reporting period, "then any 'claim' that may subsequently be made against the insured arising out of such negligent act, error or omission shall be deemed to have been made during the policy period" or extended reporting period. Doc. 50-3 at 14. So, for example, if Expert Au Pair reported to Berkley negligent acts occurring during the initial policy period that did not give rise to a claim until the renewal policy period, the claim would be "deemed to have been made" during the initial policy period. Near as we can tell, however, Expert Au Pair makes no argument along these lines.

12

Expert Au Pair, Berkley's complaint described the two Berkley policies together as the "policy" and argued for application of the exclusion based on the inception date of the initial policy. But at summary judgment, Berkley changed course without amending the complaint and relied solely on the renewal policy and its policy period. Expert Au Pair asserts that Berkley should be bound by the allegations in the complaint.

We conclude that this argument was not properly raised below. While Expert Au Pair noted this discrepancy in passing in its summary-judgment filings, it never pressed an argument that Berkley was bound by the complaint's characterization of the E&O policies. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (arguments raised for the first time on appeal are not properly before us). Nor is this the type of issue that we feel compelled to address for the first time on appeal. *See id.* at 1332 (noting "special circumstances" in which "we *may* choose to hear the argument"). Specifically, we disagree with Expert Au Pair that the "proper resolution" of this issue is "beyond any doubt." *See id.* Had this matter been properly raised below, the court could have permitted amendment of the complaint or some other remedy.

For these reasons, we hold that the "inception date of this policy," for purposes of applying the prior-knowledge exclusion in this case, refers to the inception date of the renewal policy, February 14, 2016.

13

**B.**

Having defined the relevant period, we turn now to whether the prior-knowledge exclusion barred coverage for Mapledoram's claims against Expert Au Pair. As noted above, the policy provides coverage only if as of the inception date "no insured had any knowledge of any circumstance likely to result in or give rise to a 'claim' nor could have reasonably foreseen that a 'claim' might likely be made." These kinds of conditions are "common in claims-made policies because they ensure that only risks of unknown loss are potentially incurred, and prevent an insured from obtain[ing] coverage for the risk of a known loss, which would be unfair to the insurer." *Cohen-Esrey Real Estate Servs. Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1303 (10th Cir. 2011) (citations and quotation marks omitted).

Expert Au Pair contends that Berkley failed to show that Mapledoram's claim was "likely," which, in its view, means "more likely than not," or having a probability greater than 50%. It notes several facts which, according to Expert Au Pair, demonstrate that its belief it would not be sued for negligence was reasonable, including the following: (a) it was one of the smallest sponsors in the program; (b) as of the first amended complaint, around only one-third of the sponsors had been sued for negligent misrepresentation; (c) it operated differently than other sponsors, such as noting on its website that host families could pay au pairs more than $195.75

14

per week; and (d) it had received a "praise message" from Mapledoram just a few months before she joined the Beltran case.

Even assuming Expert Au Pair is correct on the definition of the term "likely," however, "likely" is modified by the term "might." And "the term 'might' . . . under any plain and reasonable interpretation indicates a requirement for lesser degree of certainty." *Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 976 n.7 (8th Cir. 2013). Expert Au Pair's interpretation effectively reads the term "might" out of the policy and demands a degree of certainty inconsistent with the policy language. *See* Appellant's Br. at 24, 30 ("Berkley was required to prove not only that EAP specifically knew that Mapledoram is intending to bring a claim against it, but awareness of the specific claims brought by Mapledoram."). The prior-knowledge exclusion is not limited to claims that are "imminent" or certain to be made.

Here, we have little difficulty concluding that Au Pair had actual knowledge of facts, as of the inception date of the renewal policy, from which it "could have reasonably foreseen that a 'claim' might likely be made."[4] To begin with, we can assume without deciding that the initial Beltran complaint was not sufficient to put

---

[4] Because we conclude that the "reasonably foreseeable" prong of the exclusion applies, we do not consider the alternative prong of the exclusion—that is, whether Expert Au Pair "had any knowledge of any circumstance likely to result in or give rise to a 'claim.'"

15

Expert Au Pair on notice. While Expert Au Pair knew that it was accused of participating in a price-fixing conspiracy to suppress au pair wages in the J-1 Au Pair Program, none of the sponsors were accused of negligence.

But the first amended complaint, filed in March 2015, clearly put Expert Au Pair on notice of a potential negligence claim against it. First, the amended complaint added a negligent-misrepresentation claim. Second, the factual allegations implicated Expert Au Pair in essentially the same conduct as the defendants in that claim—misrepresenting to au pairs that the $195.75/week wage advertised on its website was a fixed wage rather than a wage floor—even if Expert Au Pair was not named as a defendant. And third, the amended complaint, which added three new plaintiffs, made clear that class counsel in the Beltran case was looking for au pairs to act as representative plaintiffs against their respective sponsors.

Given that multiple other sponsors had been accused of negligent misrepresentation for essentially the same conduct Expert Au Pair was alleged to have committed, in conjunction with the evident possibility of additional plaintiffs joining the Beltran case, a reasonable insured in Expert Au Pair's position "could have reasonably foreseen that a 'claim' might likely be made" against it as well. Expert Au Pair cannot reasonably claim it was surprised by Mapledoram's negligence claims. Based on the facts known to it as of February 14, 2016, the

16

inception date of the renewal policy, it had an objective basis to anticipate the specific negligence claim that was eventually filed against it—even if it had no reason to suspect that Mapledoram in particular would be the one to bring the claim.

It does not matter that Expert Au Pair may have believed that its actual conduct made it different than other sponsors. The question under the prior-knowledge exclusion in this case is whether Expert Au Pair "could have reasonably foreseen that a 'claim' might likely be made," not whether such a claim would be likely to succeed. Notwithstanding that Expert Au Pair may have had reasons to believe that its practices differed from other sponsors, it also knew that, as we've already explained, it was alleged to have committed essentially the same conduct as the other defendants to the negligent-misrepresentation claim. Any reasonable insured in these circumstances could have foreseen that a similar claim "might likely be made" against it as well, even if they believed such a claim unfounded. *See Cohen-Esrey Real Estate Servs.*, 636 F.3d at 1305 ("The threat of a claim, even an unfounded one, is relevant to the insurer's exposure, because defense costs, which can be quite substantial, are covered by the policy even when the claim against the insured proves unsuccessful.").

As for Expert Au Pair's statistical arguments about the number of au pairs it placed in comparison to other sponsors, we find them unpersuasive. Expert Au Pair may have been one of the smallest sponsors in the program, but it still sponsored

17

approximately 500 au pairs.  Because Expert Au Pair was alleged to have suppressed the wages of many if not all of these au pairs, below applicable minimum-wage requirements, it was not reasonable to believe that its smaller size protected it from *any* potential negligence claims.

Finally, Expert Au Pair contends that applying the prior-knowledge exclusion in this case renders the coverage illusory or the policy ambiguous.  "In order for an exclusion to render a policy's coverage illusory it must eliminate all—or at least virtually all—coverage in a policy."  *Zucker v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017) (applying Florida law).  A policy exclusion may also create an ambiguity if it "swallow[s] up an insuring provision."  *Id.*

In Expert Au Pair's view, the district court's interpretation of the policy means that the Beltran case precludes coverage "as to any possible claim brought by an au pair."  We disagree.  The exclusion does not prevent coverage for claims brought by an au pair that do not involve the specific wage-related violations alleged in the Beltran case.  The mere fact that the exclusion applies in this specific case, for the reasons explained above, does not mean it applies in any case brought by an au pair. Expert Au Pair offers no legal support for its claim that Berkley was required to expressly exclude claims related to the lawsuit when it issued the policy.  And we see no ambiguity in the prior-knowledge exclusion that must be construed against Berkley.

18

Because we conclude that the information Expert Au Pair undisputedly possessed at the renewal policy's inception showed that a negligent-misrepresentation claim "might likely be made" against it, we conclude that Berkley has established that the prior-knowledge exclusion applies.  We therefore affirm the grant of summary judgment in Berkley's favor.

**AFFIRMED.**

19